UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Erica Martin,<br><br>    Plaintiff,<br><br>v.<br><br>EOS CCA,<br><br>    Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER PROTECTION ACT, THE MICHIGAN OCCUPATIONAL CODE AND OTHER EQUITABLE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

**PARTIES**

1. Plaintiff, Erica Martin ("Erica"), is a natural person who resided in Muskegon, Michigan, at all times relevant to this action.

2. Defendant, EOS CCA ("EOS CCA"), is a d/b/a of Collecto, Inc., a Massachusetts corporation that maintained its principal place of business in Norwell, Massachusetts, at all times relevant to this action.

**JURISDICTION AND VENUE**

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Plaintiff's claims under the Michigan Occupational Code ("MOC"), Mich. Comp. Laws § 339.901, et seq., because those claims share a common nucleus of operative facts with Plaintiff's claims under the FDCPA. S*ee Litt v. Midland Credit Management, Inc.*, 2014 U.S. Dist.

LEXIS 66658 (E.D. Mich. May 15, 2014)(in FDCPA case, supplemental jurisdiction exercised over claims under MOC).

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. Before EOS CCA began contacting Erica, it and Erica had no prior business relationship and Erica had never provided express consent to EOS CCA to be contacted on her cellular telephone.

7. EOS CCA regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. The principal source of EOS CCA's revenue is debt collection.

9. EOS CCA is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10. As described, *infra*, EOS CCA contacted Erica to collect a debt that was incurred primarily for personal, family, or household purposes.

11. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12. Erica is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13. Within the past twelve months, and before, EOS CCA has been calling Erica on Erica's cellular phone in an attempt to collect a debt for another individual.

14. Shortly after the calls began, Erica advised EOS CCA that Erica was not the individual with whom EOS CCA was looking to speak.

15. In addition, Erica communicated Erica's desire that EOS CCA cease calling Erica.

16. Despite this communication, EOS CCA continued to call Erica on Erica's cellular phone in an attempt to collect a debt for another individual, including within the past twelve months.

17. Subsequently, on more than one occasion, Erica reiterated that Erica was not the individual EOS CCA was looking for and communicated her desire that EOS CCA cease calling her.

18. Despite these communications, EOS CCA continued to call Erica on Erica's cellular phone in an attempt to collect a debt for another individual.

19. Thereafter, Erica notified EOS CCA that Erica retained legal counsel and provided her attorney's contact information.

20. Despite this notice, EOS CCA continued to call Erica on Erica's cellular phone.

21. EOS CCA's policies and procedures for processing account data received from original creditors fail to identify easily discoverable errors and avoid the needless harassment of undeserving consumers like Erica.

22. EOS CCA unreasonably relied upon inaccurate information provided to EOS CCA by one (1) or more original creditors for whom EOS CCA was attempting to collect a debt when EOS CCA called Erica's cellular telephone.

23. EOS CCA's policies and procedures violate the FDCPA.

24. EOS CCA caused Erica emotional distress.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

25. Plaintiff re-alleges and incorporates by reference Paragraphs 13 through 24 above as if fully set forth herein.

26. Defendant violated 15 U.S.C. § 1692c(a)(2) by communicating with Plaintiff notwithstanding knowledge that Plaintiff was represented by an attorney with respect to the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

27. Plaintiff re-alleges and incorporates by reference Paragraphs 13 through 24 above as if fully set forth herein.

28. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

29. Plaintiff re-alleges and incorporates by reference Paragraphs 13 through 24 above as if fully set forth herein.

30. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FOUR

### Violation of the Telephone Consumer Protection Act

31. Plaintiff re-alleges and incorporates by reference Paragraphs 13 through 24 above as if fully set forth herein.

32. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

33. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

34. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 13, ¶ 13; *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

35. A predictive dialer is an ATDS within the meaning of the TCPA. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 13, ¶ 13; *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

36. The TCPA provides, in part:

> (b)   RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
>> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>>
>>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>>>
>>> * * *

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

37. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, pp 40-41, ¶¶ 72-73.

38. Any consent that may have been previously given as to a called telephone number lapses when that number is reassigned. *Soppet*, 679 F.3d, at 641; *Sterling v. Mercantile Adjustment Bureau, LLC*, 2013 U.S. Dist. LEXIS 186432, *6-7 (W.D.N.Y. Nov. 22, 2013).

39. A caller that places calls to a reassigned telephone number without the express consent of the called party is deemed to have "constructive knowledge" of the reassignment after one phone call has been placed to that reassigned number. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 40, ¶ 72.

40. Plaintiff was the "called party" in each telephone call Defendant placed to a Plaintiff's cellular telephone.

41. Defendant violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Plaintiff on her cellular telephone without Plaintiff's prior express consent or after such consent had been revoked.

42. In addition, The TCPA provides, in part:

    > If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

    47 U.S.C. § 227(b)(3).

43. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

44. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc*. 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013); *Steward v. Regent Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011).

45. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 U.S. Dist. LEXIS, at *21-22; see also *Roylance*, 2015 U.S. Dist. LEXIS, at *31 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

46. Defendant voluntarily placed telephone calls to Plaintiff's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

47. In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called.  *See*

*Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla 2012); *aff'd* 755 F.3d 1265 (11th Cir. 2014).

48. Defendant failed to adequately place intermittent live verification calls to Plaintiff's cellular telephone number to ensure that Plaintiff had provided his/her express consent to Defendant to call those telephone numbers.

49. Defendant's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## COUNT FIVE

### Violations of the Michigan Occupational Code

50. Plaintiff re-alleges and incorporates by reference Paragraphs 13 through 24 above as if fully set forth herein.

51. Defendant is a "collection agency" as that term is defined in the MOC, Mich. Comp. Laws § 339.901(b).

52. Plaintiff is a "consumer" as defined by the MOC and is a person whom the act was intended to protect, Mich. Comp. Laws § 339.901(f).

53. Defendant attempted to collect a "debt" within the meaning of Mich. Comp. Laws § 339.901(a).

54. Defendant willingly and knowingly violated Mich. Comp. Laws § 339.915(n) by using harassing, oppressive, or abusive methods to collect a debt.

55. Defendant willingly and knowingly violated Mich. Comp. Laws § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

56. Defendant's willful violations of the MOC entitle Plaintiff to a civil penalty of not less than three (3) times the actual damages he sustained as a result of Defendant's violations of the MOC.

## JURY DEMAND

57. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

58. Plaintiff prays for the following relief:

   a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

   b. An order enjoining Defendant from placing further telephone calls to Plaintiff's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

   c. Judgment against Defendant for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Defendant made in violation of the TCPA.

   d. Judgment against Defendant for actual damages, statutory damages, costs and reasonable attorney's fees, plus a civil penalty of not less than three (3) times Plaintiff's actual damages, pursuant to Mich. Comp. Laws § 339.916.

   e. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: April 15, 2016

By: /s/ David M. Menditto
One of Plaintiff's Attorneys

David M. Menditto, Esq.
Hyslip & Taylor, LLC LPA
1100 W. Cermak Rd., Suite B410
Chicago, IL  60608
Phone: 312-380-6110
Fax: 312-361-3509
Email: davidm@fairdebt411.com